UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MICHAEL YELAPI, PATRICIA SANCHEZ,
JAIME MARIONA, JULIA MICHALKA
and DISABILITY RIGHTS FLORIDA,

   Plaintiffs,

  v.             Case No.

RONALD DESANTIS, in his official
capacity as Governor of Florida and the
Executive Office of the Governor.

   Defendants.

_____/

## COMPLAINT AND DEMAND FOR DECLARATORY AND INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

Plaintiffs bring this action against Governor Ronald DeSantis in his official

capacity as Governor of the State of Florida and against the Executive office of the

Governor for their practice of holding Press briefings regarding the COVID-19

1

pandemic without providing simultaneous American Sign Language[1] ("ASL") for television broadcast for deaf[2] audience members. Plaintiffs assert that the Defendants' practice violates Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") and say:

1. The COVID-19 pandemic is disproportionately impacting Floridians, with 282,435 confirmed COVID-19 cases at the time of this filing, and Florida is in the midst of hurricane season. *See Florida COVID-19 Response,* available at, https://floridahealthcovid19.gov/ (last visited on July 13, 2020).

2. Governor DeSantis' COVID-19 briefings provide critical information about steps that the state and federal government are taking to address the health crisis and recommendations on how Floridians can stay safe and help limit the spread of the virus.

3. The Governor ordered schools and non-essential businesses to close.

---

[1] American Sign Language ("ASL") is a complete, natural language that has the same linguistic properties as spoken languages, with grammar that differs from English. ASL is expressed by movements of the hands and face. It is the primary language of many North Americans who are deaf and hard of hearing and is used by many hearing people as well." U.S. Dept. of Health and Human Services, Nat'l Inst. On Deafness and Other Communication Disorders, available at https://www.nidcd.nih.gov/health/american-sign-language (last accessed June 18, 2020).

[2] Disability Rights Florida recognizes that people use many terms to describe their hearing-related disabilities. DRF uses "deaf" in this Complaint for brevity, with no intent of offending or excluding those who prefer, require, and use other terms.

4. The Governor has directed people in Florida to maintain a distance of 6-feet when in public.

5. The Governor has directed the public to wear masks or face coverings when in essential businesses, taking public or private transportation, or riding in for-hire vehicles.

6. In recent press conferences Governor DeSantis has addressed issues related to the reopening of certain businesses and the conditions under which they must operate.

7. Many deaf Floridians cannot understand Governor DeSantis' briefings without live, televised ASL interpretation in frame[3].

8. According to the 2018 census American Community Service 1-year subject tables, there are approximately 820,999 people in Florida who are deaf or hard of hearing.[4]

9. ASL is the primary language for Michael Yelapi, Patricia Sanchez, Jaime Mariona, Julia Michalka, and the majority of deaf individuals.

---

[3] Our request for "in frame" ASL means simultaneous sign language interpreting where the sign language interpreter is visible on the screen beside the governor (speaker). The in frame, on screen interpreter would be visible on televised broadcast and on streamed mobile devices.
[4] *U.S. Census Bureau Am. Community Surv.: Disability Characteristics 2018*, available at https://data.census.gov/cedsci/table?q=Florida%20Health&tid=ACSST1Y2018.S1810&vintage=2018&g=0400000US12&hidePreview=true (last visited on June 26, 2020).

10. These individuals are often unable to follow closed captioning due to imperfections in the transcription, English being their second language, cognitive and/or processing issues, and other factors.

11. June 1st was the official start of the hurricane season in the state of Florida.

12. The National Oceanic and Atmospheric Administration (NOAA) is predicting an "above-normal" 2020 Atlantic hurricane season, with 13 to 19 named storms.[5]

13. NOAA forecasters said that 6 to 10 of those storms will become hurricanes and 3 to 6 of those would become major hurricanes with 111 mph winds or higher.[6]

14. It has been the Governor's pattern and practice in the past to issue important information about approaching hurricanes, emergency evacuations, and precautions through the use of press conferences, and the Plaintiffs believe that he will continue this practice.

15. As Floridians who are deaf, the Plaintiffs are extremely vulnerable during the COVID-19 pandemic compounded by the impending hurricane season. COVID-19 could drastically alter how hurricane shelters function and their capacity.

---

[5] *National Oceanic and Atmospheric Administration: Busy Atlantic Hurricane Season Predicted for 2020*, available at https://www.noaa.gov/media-release/busy-atlantic-hurricane-season-predicted-for-2020 (last visited June 26, 2020).
[6] *Id.*

16. The Plaintiffs will require accurate, real time information regarding emergency planning, including but not limited to, evacuation plans, access and location of shelters, supplies, location of the impending storm and suspected landfall.

17. The Plaintiffs will not have the time to search for this information and are entitled to the same access to this information as the non-disabled residents of Florida.

## JURISDICTION AND VENUE

18. Plaintiffs' federal claims are made pursuant to Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

20. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

21. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) as a number of the events and omissions complained of below occurred in this district and the Defendants' offices are located in this district.

## PARTIES

22. PLAINTIFF MICHAEL YELAPI is a deaf resident of St. Petersburg, Florida.

23. Mr. Yelapi is fluent in ASL, and it is his preferred and primary language.

24. PLAINTIFF PATRICIA SANCHEZ is a deaf resident of Tampa, Florida.

25. Ms. Sanchez's preferred language is ASL.

26. PLAINTIFF JAIME MARIONA is a deaf resident of Kissimmee, Florida.

27. Mr. Mariona is fluent in ASL, and it is his primary language.

28. PLAINTIFF JULIA MICHALKA is a deaf resident of Tampa, Florida.

29. Ms. Michalka is fluent in ASL, which is her preferred language.

30. PLAINTIFF DISABILITY RIGHTS FLORIDA ("DRF") is an independent, non-profit corporation organized under the laws of the State of Florida and its primary office is in Tallahassee, FL.

31. DRF is a Protection and Advocacy system ("P&A"), as that term is defined under the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. § 15041 et seq., the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 et seq., and the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e et seq. with offices in the State of Florida located at: 2473 Care Drive, Suite 200, Tallahassee, FL 32308; 4723 NW 53rd Ave Suite B, Gainesville, FL 32653; 1000 North Ashley Drive, Suite 640, Tampa, FL 33602 and 1930 Harrison Street, Suite 104, Hollywood, FL 33020.

32. As Florida's Protection & Advocacy system, DRF is specifically authorized to pursue legal, administrative, and other appropriate remedies or approaches to

ensure the protection of, and advocacy for, the rights of individuals with disabilities. 42 U.S.C. § 15043(a)(2)(A)(i).

33. Pursuant to the authority vested in it by Congress to file claims of abuse, neglect, and rights violations on behalf of individuals with disabilities, DRF brings claims on behalf of individuals with disabilities, including the individuals named herein who are seeking or may seek publicly available government information pertaining to the COVID-19 pandemic.

34. DRF has standing on behalf of its constituents and clients who are substantially affected by Governor DeSantis' noncompliance with statutory protections as stated in this Complaint because such noncompliance falls within DRF's general scope of interest and activity; the relief requested—declaratory and injunctive—is the type of relief appropriate for DRF to receive on behalf of its individual constituents; and neither the claims asserted nor the relief requested require the participation of individual members or constituents in the lawsuit.

35. DRF's constituents and clients have suffered injury—and continue to suffer injury—that would allow them to have standing to sue in their own right. The interests DRF seeks to protect are germane to DRF's purpose.

36. DRF has a multi-member board of directors that includes persons with disabilities.

37. DRF provides the opportunity for the public, including its stakeholders, to comment on its goals and objectives.

38. DRF has a grievance procedure that complies with federal requirements and ensures that individuals receive necessary services.

39. One of DRF's primary responsibilities is to investigate the failure of public entities to comply with the Americans with Disabilities Act ("ADA") and 504 of the Rehabilitation Act of 1973 ("Section 504") and protecting DRF's members, clients, and constituents.

40. People with physical disabilities—among DRF's constituents—are on DRF's board of directors. DRF represents people with physical disabilities and provides the means by which they express their collective views and protect their collective interests.

41. Defendant Ronald DeSantis is the Governor of the State of Florida. He is sued in his official capacity of the Governor of the State of Florida.

42. The Governor exercises the highest level of executive authority in state government, informs the Legislature on the conditions of the state, directs executive programs, implements legislative intent, and participates with the Cabinet.

43. The Governor, in his official capacity, frequently holds news or press conferences and makes public statements to provide information on matters of concern to Florida residents.

44. Governor DeSantis, in his official capacity as Governor of the State of Florida, is covered as a public entity under Title II of the ADA.

45. Governor DeSantis, in his official capacity as Governor of the State of Florida, is a recipient of federal financial assistance and is therefore covered under Section 504.

46. Governor DeSantis, in his official capacity as the Governor of the State of Florida is responsible for the Executive Office of the Governor.

47. Governor DeSantis is responsible for ensuring that the Executive Office of the Governor operates its services, programs, and activities in conformity with Title II of the Americans with Disabilities Act ("ADA") and 504 of the Rehabilitation Act of 1973 ("Section 504).

48. Defendant the Executive Office of the Governor was established by §14.201 Fla. Stat.(2019)

49. The function of the office is to assist the Governor in meeting statutory and constitutional duties.

50. The key responsibilities include administering executive planning and budgeting functions and assessing the efficiency and effectiveness of state programs.

51. The Executive Office of the Governor includes the state Division of Emergency Management.

52. The Executive Office of the Governor, is a recipient of federal funding including, but not limited to, substantial federal funding to the Division of Emergency Management to plan for and respond to emergencies and disasters.

53. The Executive office of the Governor is covered as a public entity under Title II of the ADA.

54. The Executive office of the Governor is a recipient of federal financial assistance and is therefore covered under Section 504.

## STATEMENT OF FACTS

55. On or about March 2, 2020, Governor DeSantis began holding televised briefings regarding the COVID-19 outbreak in Florida.

56. Governor DeSantis' briefings typically last between 30 and 60 minutes, and he has held over 50 news briefings.

57. Governor DeSantis' briefings have included key government officials, such as representatives from Florida's Department of Health, Florida's Surgeon General, and Local Mayors from different Counties in the State of Florida.

58. Governor DeSantis has held briefings throughout the State of Florida, including the capital, Tallahassee, as well as Tampa, Miami, Palm Beach, Jacksonville, Orlando, The Villages, and Pensacola.

59. Local and major news networks, including ABC, CBS, NBC, and Fox, have broadcasted Governor DeSantis' briefings live to a national audience.

60. Governor DeSantis' briefings cover a wide range of topics, including the number of confirmed COVID-19 cases, the availability of testing, information about social distancing and other personal safety measures to be utilized by Floridians to stop the spread of the virus, and the coordination of local, state, and federal government emergency response systems.

61. More recent briefings from the Governor have addressed important topics such as the phased re-opening of government services and businesses in the state.

62. Governor DeSantis' has failed to provide televised in-frame ASL interpretation of his COVID-19 briefings.

63. As of March 2, 2020, roughly when the Governor began holding regular press conferences and briefings regarding the COVID-19 pandemic, and the date of this Complaint, there have been at least 48 instances in which there was no ASL interpreter present.

64. On March 6, 2020, DRF requested that Governor DeSantis provide an ASL interpreter for effective communication at all his news briefings.

11

65. While Governor DeSantis has sporadically attended news conferences where, upon information and belief, ASL interpretation was provided by the local municipalities, the Governor continues to fail to provide ASL interpreters for his COVID-19 briefings.

66. Closed captioning is not provided on all television channels broadcasting the news briefings, and when closed captioning is provided, questions from the audience are not captioned.

67. The closed captioning frequently contains errors and omissions that make it difficult or impossible for individuals who are deaf to understand the information being provided in the briefings.

68. DRF has received numerous complaints from deaf Floridians who are unable to understand Governor DeSantis' briefings due to the lack of effective ASL interpretation.

69. Since March 6, 2020, DRF has continuously requested that Governor DeSantis provide ASL interpretation for all briefings broadcast on television.  DRF has sent emails to the Governor on March 6, 10, 19 and 27, 2020 requesting qualified interpreters at his news briefings and has called via the telephone on two separate occasions on or about March 6 and March 19, 2020.

70. On April 15, 2020, DRF sent a letter via fax to Governor DeSantis to advocate for Floridians who are deaf and unable to access and benefit from his news briefings based on the ongoing lack of ASL interpretation.

71. DRF requested the Governor provide ASL interpreters at his news briefings, to provide access to the residents of Florida who are deaf or hard of hearing.

72. On April 17, 2020, DRF sent the same letter via fax to the Governor's Communications Director, Helen Aguirre Ferré.

73. Helen Ferré is the Director of Communications for the Governor and directs the Communications Office of the  Executive Office of the Governor.

74. The Communications Office provides support for the Governor in the dissemination of information regarding his programs and initiatives. The office provides information regarding the Governor's agenda to radio, print and television journalists, issues press releases and schedules press conferences.

75. To date, neither Governor DeSantis nor anyone from his office has responded to DRF's requests for the provision of qualified ASL interpreters during the Governor's press briefings or responded to DRF in any way.

76. On April 29, 2020, Governor DeSantis hosted a press briefing addressing reopening plans for the State of Florida.

77. Governor DeSantis did not provide an ASL interpreter during the televised broadcast of this briefing.

78. DRF continues to receive complaints from Floridians who are deaf or hard of hearing and unable to access and benefit from Governor DeSantis' news briefings.

**Plaintiff Michael Yelapi**

79. PLAINTIFF MICHAEL YELAPI is a 56-year-old deaf resident of St. Petersburg, Florida.

80. As a deaf individual, Mr. Yelapi is a qualified individual with a disability for purposes of the ADA and Section 504.

81. Mr. Yelapi is fluent in ASL, and it is his preferred and primary language.

82. Because of Governor DeSantis' failure to provide an ASL interpreter to his press briefings, Mr. Yelapi has missed important information about the COVID-19 pandemic and has felt frustrated and upset because he cannot access the information.

83. Closed captioning, when available, goes too fast for Mr. Yelapi to read the information and is not an effective means of communication for him.

84. Mr. Yelapi works as a Deaf and Hard of Hearing Service Coordinator.

85. As a Deaf and Hard of Hearing Coordinator, Mr. Yelapi is responsible for providing information and referral services related to disability issues to individuals and the community at large, peer support to individuals with disabilities, and resources that are supportive of people with disabilities.

Additionally, Mr. Yelapi manages the Florida Telecommunication Relay Program (amplified phones).

86. As a Deaf and Hard of Hearing Service Coordinator, Mr. Yelapi provides information to his clients who contact him with questions regarding the COVID-19 pandemic. Mr. Yelapi's clients are unsure about whether they should seek testing, the location and requirements for testing, whether masks are required, what businesses are open, and the extent to which 6-feet social distancing is required.

87. Because Mr. Yelapi cannot rely on Governor DeSantis' news briefings for accessible information on the COVID-19 pandemic, he is unable to answer questions on COVID-19 for his clients based on Governor DeSantis' news briefings. Instead, Mr. Yelapi must seek out hearing co-workers and research information to appropriately advise his clients on how to survive the COVID-19 pandemic, as well as on any upcoming hurricane issues. This creates a delay in gathering and disseminating vitally important and time-sensitive information to Mr. Yelapi's deaf clients.

88. Mr. Yelapi asserts that closed captioning is not reliable for all individuals who are deaf or hard of hearing to access information because closed captioning goes too fast and it is difficult to keep up.

**Plaintiff Patricia Sanchez**

89. PLAINTIFF PATRICIA SANCHEZ is a 56-year-old deaf resident of Tampa, Florida.

90. As a deaf individual, Ms. Sanchez is a qualified individual with a disability for purposes of the ADA and Section 504.  Ms. Sanchez is deaf.

91. Ms. Sanchez's first language is Spanish. She is fluent in ASL, which is her preferred language.

92. Ms. Sanchez uses social media, such as Facebook and Twitter to view Governor DeSantis' news briefings and closed captioning is not always available when live streaming on social media.

93. Ms. Sanchez asserts closed captioning does not always match what the speaker is saying.

94. Ms. Sanchez works as a Senior Employment Specialist at a not for profit agency providing services to individuals with disabilities.

95. Ms. Sanchez did not understand Governor DeSantis' "Reopening Florida" news briefing and had to search other sources, including the newspaper, to obtain information.

96. Ms. Sanchez watches Governor DeSantis' news briefings because she wants information on how to stay safe at work and in the community.

16

97. Ms. Sanchez misses important information due to Governor DeSantis' lack of providing an ASL interpreter.

98. Ms. Sanchez must rely on other individuals and newspapers in order to gather vitally important information on COVID-19 and the upcoming hurricane season.

**Plaintiff Jaime Mariona**

99. PLAINTIFF JAIME MARIONA is a 45-year-old deaf resident of  Kissimmee, Florida.

100. As a deaf individual, Mr. Mariona is a qualified individual with a disability for purposes of the ADA and Section 504.

101. Mr. Mariona is fluent in ASL, and it is his primary language.

102. Mr. Mariona has watched Governor DeSantis' news briefings since early March 2020.

103. Mr. Mariona has contacted the Governor's office to complain he is not receiving effective communication due to the lack of an ASL interpreter at the press conferences.

104. Mr. Mariona specifically remembers the press conference when Governor DeSantis was addressing the reopening of the State of Florida.

105. Mr. Mariona expressed an overwhelming feeling of not being able to understand and follow the plans to reopen Florida.

17

106. Mr. Mariona worries that he has missed important health and safety information due to his inability to understand the Governor's news briefings.

107. Mr. Mariona expressed closed captioning is often not clear and is hard to follow.

**Plaintiff Julia Michalka**

108. PLAINTIFF JULIA MICHALKA is a 48-year-old deaf resident of Tampa, Florida.

109. As a deaf individual, Ms. Michalka is a qualified individual with a disability for purposes of the ADA and Section 504.

110. Ms. Michalka's first language is Slovak. She is fluent in ASL, which is her preferred language.

111. Ms. Michalka watches Governor DeSantis' news briefing on her telephone and device.

112. Ms. Michalka has watched Governor DeSantis' briefings several times since March 2, 2020, regarding the COVID-19 pandemic.

113. Ms. Michalka was unable to understand a significant portion of the information in the briefing because the closed captioning does not always appear when she is viewing the briefings from her device or telephone.

114. Ms. Michalka does not trust closed captioning as she believes it is unreliable due to its inaccuracies.

115. Ms. Michalka works for a Center for Independent Living. 50% of her consumers are deaf and rely on her for information and 30% of her consumers' language is strictly ASL.

116. Ms. Michalka found Governor DeSantis' "Reopening Florida" news briefing confusing and knows that her deaf consumers did not understand the reopening Plan.

117. Ms. Michalka had to research the reopening plan because Governor DeSantis did not have an ASL interpreter at his news briefing.

118. Ms. Michalka asserts that due to her lack of understanding of Governor DeSantis' news briefings she has to research the information, which is time consuming and results in a 24 to 48-hour delay in her receiving the information.

## FIRST CLAIM FOR RELIEF
## TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, *et seq.*

119. Plaintiffs incorporate by reference each allegation contained in the foregoing paragraphs as if specifically alleged herein.

120. Title II of the ADA states, in pertinent part: [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity. 42 U.S.C. § 12132.

121. A "public entity" includes state and local government, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1).

122. Governor DeSantis, acting in his official capacity, at all times relevant to this action, and currently is a "public entity" within the meaning of Title II of the ADA.

123. Governor DeSantis provided and provides "services, programs [and] activities" through his office. 28 C.F.R. § 35.130.

124. The Executive Office of the Governor at all times relevant to this action, and currently is a "public entity" within the meaning of Title II of the ADA.

125. The Executive Office of the Governor provided and provides "services, programs [and] activities" through his office. 28 C.F.R. § 35.130.

126. The term "disability" includes physical and mental impairments that substantially limit one or more major life activities. 42 U.S.C. § 12102(2).

127. A "qualified individual with a disability" is a person "who, with or without reasonable modification to rules, policies or practices … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

128. Public entities are required to take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others. 28 C.F.R. § 35.160(a)(1).

129. Public entities are required to provide reasonable accommodations in the form of "appropriate auxiliary aids and services" when necessary to provide individuals with disabilities an equal opportunity to participate in a service, program, or activity. 28 C.F.R. § 35.160(b)(1).

130. "Auxiliary aids and services" includes qualified interpreters. 28 C.F.R. § 35.104.

131. The necessary type of auxiliary aid or service to ensure effective communication depends on the method of communication used by the individual with a disability; the nature, length, and complexity of the communication involved; and the context of the communication. 28 C.F.R. § 35.160(b)(2).

132. Public entities are required to give primary consideration to the requests of individuals with disabilities in determining what types of auxiliary aids and services are needed. *Id.*

133. Plaintiffs, in seeking access to Governor DeSantis' COVID-19 briefings, are qualified individuals under the ADA.

134. Plaintiffs, in their attempts to access Governor DeSantis' televised briefings, are frequently unable to understand portions of the briefing by following closed captioning, when available.

135. As a result of the acts and omissions of Governor DeSantis' and the Executive Office of the Governor, deaf Floridians are unable to obtain critical health and safety information from his COVID-19 briefings.

136. Plaintiffs face irreparable harm in that they have been and, without intervention from this Court, will continue to be denied critical information regarding the COVID-19 public health crisis and emergency information regarding hurricane and other emergency preparedness information.

## SECOND CLAIM FOR RELIEF
## SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

137. Plaintiffs incorporate by reference each allegation contained in the foregoing paragraphs as if specifically alleged herein.

138. Section 504 provides, in pertinent part that "no otherwise qualified individual with a disability in the United States… shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

139. Governor DeSantis was acting in his official capacity at all times relevant to this complaint and is currently a recipient of federal financial assistance within the meaning of Section 504.

140. Governor DeSantis' oversees the Executive Office of the Governor.

141. The function of the Executive Office of the Governor is to assist the Governor in meeting statutory and constitutional duties.

142. The key responsibilities include administering executive planning and budgeting functions and assessing the efficiency and effectiveness of state programs.

143. The Executive office of the Governor includes the state Division of Emergency Management.

144. The Executive Office of the Governor, receives substantial federal funding. This includes federal funding to the Division of Emergency Management to plan for and respond to emergencies and disasters.[7]

145. Governor DeSantis provided and provides a "program or activity" where "program or activity" is described as "all operations of a department, agency, special purpose district or other instrumentality of a State or of a local government." 29. U.S. C. § 794(b)(1)(A).

146. A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(9)(B) citing 42 U.S.C. § 12102(1)(A).

---

[7] This includes, but is not limited to, receipt of over 34 million dollars in funding from the Federal Emergency Management Agency in April 2020.  https://www.fema.gov/news-release/2020/04/03/fema-approves-additional-34-million-florida-division-emergency-management (last visited on June 24, 2020).

147. Deaf Floridians are qualified individuals under Section 504.

148. Governor DeSantis' practice of denying access to ASL interpretation violates Section 504 by authorizing, or failing to forbid, actions that:

    a. Exclude from participation in, deny the benefits of, or otherwise subject individuals to discrimination on the basis of disability. 29 U.S.C.§ 794(a); 28 C.F.R. § 41.51(a).

    b. Deny qualified persons with a disability the opportunity to participate in or benefit from the aid, benefit, or service. 45 C.F.R. § 84.4(b)(1)(i); 28 C.F.R. § 41.51(b)(1)(i).

    c. Afford qualified persons with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded to others. 45 C.F.R. §§ 84.4(b)(1)(ii), 84.52(a)(2); 28 C.F.R. § 41.51(b)(1)(ii).

    d. Limit individuals with a disability in the enjoyment of rights, privileges, advantages and opportunities enjoyed by others receiving an aid, benefit, or service. 45 C.F.R. §§ 84.4(b)(1)(vii), 84.52(a)(4); 28 C.F.R. § 41.51(b)(1)(vii).

149. As a result of DeSantis' acts and omissions, deaf Floridians who rely on television to access his COVID-19 briefings are denied the full benefits of these briefings.

150. Plaintiffs face irreparable harm in that they have been denied equal access to Governor DeSantis' news briefings and, without intervention from this Court, will continue to be denied critical information regarding the COVID-19 public health crisis and emergency information regarding hurricane and other emergency preparedness information.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the Court to provide relief as set forth below:

1. Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201, declaring that the actions and failures of Governor DeSantis and the Executive Office of the Governor violate the ADA and Section 504 by subjecting Plaintiffs to discrimination;

2. Enter preliminary and thereafter permanent injunctive relief, pursuant to 28 U.S.C. § 2202, requiring Governor DeSantis and the Executive Office of the Governor to provide live televised in frame ASL interpretation at all briefings designed to reach residents of Florida; and order Governor DeSantis and the Executive Office of the Governor to immediately provide live televised in frame ASL interpretation at any and all briefings designed to reach residents of  Florida;

3. Retain jurisdiction over this action to ensure compliance by Governor

DeSantis and the Executive Office of the Governor  with the orders of this

Court regarding the mandates of the ADA and Section 504;

4. Award plaintiff reasonable attorney fees and costs;

5. Provide such other further relief as deemed just and proper.


DATE: July 13, 2020


By:  /S/ Ann Marie Cintron-Siegel

ANN MARIE CINTRON-SIEGEL
Disability Rights Florida
1930 Harrison Street, Ste 104
Hollywood, FL 33020
850-488-9071 Ext. 9790
FL Bar No. 0166431

/S/ Lauren Brittany Eversole

LAUREN BRITTANY EVERSOLE
Disability Rights Florida
2473 Care Drive, Suite 200
Tallahassee, FL 32308
850-488-9071 Ext. 9702
FL Bar No. 120245

/S/ Leah Wiederhorn

LEAH WIEDERHORN
National Association of the Deaf
8630 Fenton Street, Suite 820

Silver Spring, MD 20910
301-587-1788
 New York Bar No. 4502845

<u>/S/ Marc Charmatz</u>

MARC CHARMATZ
National Association of the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
301-587-7732
District Court of Maryland Bar No. 09358


Attorneys for Plaintiffs